# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JEFFERY D. ENRIQUEZ,

      **Plaintiff,**

vs.                                                       No. CIV 01-26 BB/LCS

**FRANK CORDOVA, Assistant Supervisor for Maintenance, Central New Mexico Correctional Facility, et al.,**

      **Defendants.**

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This matter comes before the Court upon the Defendants' Martinez Report, filed July 18, 2001. (*Doc. 35*). The Report addresses factual issues surrounding the September 19, 2000 incident involving Defendant Cordova's alleged attack on the Plaintiff and the October 15, 2000 incident involving Defendant Evans' alleged attack on the Plaintiff. The Defendants have not filed a motion for summary judgment based upon the Martinez Report and the Plaintiff has not filed a response to the Martinez Report.[1] The Court will, therefore, *sua sponte* address the summary judgment question raised by the Martinez Report. *See Hall v. Bellmon*, 935 F. 2d 1106, 1108 (10th Cir. 1991)(the court can *sua sponte* dismiss frivolous case under 28 U. S. C. §1915(d)). For the reasons stated, the Court recommends granting summary judgment in the Defendants' favor based on the state of the record before me.

---

[1] The Defendants have filed a Motion to Dismiss the Complaint, filed July 18, 2001, arguing the complaint should be dismissed because it fails to state a claim, it is frivolous and conclusory, it fails to affirmatively link Defendants Evans to the claims, and that the Plaintiff failed to exhaust his Administrative Remedies. Because I feel this cause of action can be decided on the merits pursuant to Plaintiff's Complaint, supplements to the Complaint and the Martinez Report, I will address this Motion to Dismiss subsequently.

**PROPOSED FINDINGS**

1.      This is a *pro se*, in forma pauperis civil rights action brought pursuant to 42 U. S. C. §1983 by Plaintiff Jeffrey Enriquez ("Enriquez"). On January 5, 2001, Enriquez filed a Prisoner's Civil Rights complaint with the Court. (*Doc. 1*). The named Defendants on the face of the complaint included: New Mexico Department of Corrections,[2] Frank Cordova, Danny Evans, Nurse Mark (John Doe), and Leon Clark.[3] The Plaintiff listed two causes of action with supporting facts within his complaint. The first claim stated that "the department of corrections and its representatives listed before used excessive force and thus did not protect me as they were suppose too [sic]! Instead of protecting me from physical abuse. Imposed on me physical pain and suffering by hitting and kicking upon my body." (Compl. at 3). The second claim stated that "on or about Sept. 19, 2000, Frank Cordova while acting as my immediate supervisor, struck me with his leg and foot in my back area. After reporting this incident to warden Bruce Langston and Capt. Steve Savadra, I was hi[t] on the right side of my face and fell to the ground stricking [sic] my head. This happened on October 15th, 2000. I was struck after being called a snitch, for telling on . . . . staff. And further, Nurse Mark refused to give me prescribed medication entering my cell while being abusive both verbally and physically by calling me names and pointing and making contact with my face." (Compl. at 3). In addition to the complaint, the Plaintiff filed a "supplement" alleging that Defendant Evans assaulted him on or about October 15, 2000 by punching him with his fist. (*Doc. 23*). Because the Court will not hold the *pro se* Plaintiff to the same stringent pleading requirements as plaintiffs with

---

[2]     New Mexico Department of Corrections was dismissed from this action on March 13, 2001. (*Doc. 6*).

[3]     Leon Clark was a former correctional officer who is now deceased. (Answer at 1).

2

representation, I will read the Plaintiff's supplement in conjunction with his complaint. *See Gillihan v. Shillinger*, 874 F. 2d 935, 938 (10th Cir. 1989).

2. On May 9, 2001, Defendants Cordova and Evans filed their Answer. (*Doc. 19*). Since the Defendants did not raise the affirmative defenses of failure to state a claim upon which relief could be granted or failure to exhaust administrative remedies, the Court issued a briefing schedule ordering Defendants to prepare a Martinez Report to further develop the factual or legal bases of Enriquez' claims. *See, e. g., Gee v. Estes*, 829 F. 2d 1005, 1007 (10th Cir. 1987). The Court provided the Plaintiff with a deadline for responding to the Report and further advised that the Report may be used by the Court for summary judgment purposes. (*Doc. 22*). The Order stated that "[a] *Martinez* report may be used in a variety of procedural situations, including in the context of a motion for, or *sua sponte* entry of, summary judgment. If a *Martinez* report is used for summary judgment purposes, however, the *pro se* plaintiff must be afforded an opportunity to present conflicting evidence to controvert the facts set out in the *Martinez* report."[4] Defendants filed the Martinez Report on July 18, 2001. Although the docket sheet indicates that Enriquez has not filed a response and/or objections to the Martinez report, the Plaintiff has filed papers resembling supplements to his complaint. Therefore, the Court will reasonably read the pleadings to state a valid claim on which the plaintiff could prevail. It should do so despite the Plaintiff's failure to cite proper legal authority, his confusion of various legal theories, or his unfamiliarity with pleading requirements. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

---

[4] The Order setting the briefing schedule including the Martinez Report also stated in bold that "the *Martinez* report may be used in deciding whether to grant summary judgment on Plaintiff's claims, whether by motion or *sua sponte*; the parties should submit whatever materials they consider relevant to Plaintiff's claims." (*Doc. 22*).

**STANDARD OF REVIEW**

3.      Summary judgment is granted only where there is no genuine dispute as to a material fact and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U. S. 317, 325 (1986); *see also Moya v. United States*, 35 F. 3d 501, 503 (10th Cir. 1994). In making a determination on a motion for summary judgment, I do not weigh the evidence, but rather ask whether a reasonable jury could return a verdict for the nonmoving party, in this case the Plaintiff, on the undisputed material evidence before the court. *See Dreiling v. Peugot Motors of America, Inc.*, 850 F. 2d 1373, 1377 (10th Cir. 1988). Further, I must consider all the evidence in the light most favorable to the Plaintiff. *Id.* In my review of the Martinez report, I have also construed the *pro se* pleadings liberally, holding the Plaintiff to a less stringent standard than that required of a party represented by legal counsel. *See, e. g., Gillihan*, 874 F. 2d at 938.[5]

**DISCUSSION**

4.      The Plaintiff's complaint alleges that the Defendants used excessive force when they attacked him on two separate occasions. Although the Plaintiff does not state a particular constitutional violation in connection to his claims, the Court will analyze his §1983 claims as violations of his Eighth Amendment right, the right to be free from cruel or unusual punishment. In *Green v. Branson*, 108 F.3d 1296, 1300 (10th Cir. 1997), the Tenth Circuit Court stated that

> [a] prison guard's use of force is not a violation of the Eighth Amendment if it is only "applied in a good faith effort to maintain or restore discipline," as opposed to being applied "maliciously or sadistically for the very purpose of causing harm." *Whitley v. Albers*, 475

---

[5] The Plaintiff has filed the following documents in which the Court will consider as "supplements" to the Plaintiff's complaint: Motion to Cure Deficiency (amend complaint) filed May 14, 2001 (*Doc. 23*) and Response to Court's Order to Cure Defect filed June 1, 2001 (*Doc. 29*).

> U.S. 312, 320-21 ... (1986)(*quoting Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)(Friendly, J.)). In *Albers*, the Court indicated that review of a claim of the use of excessive force in a prison is to be deferential to the prison, and "that neither judge nor jury [may] freely substitute their judgment for that of officials who have made a considered choice." *Id*. at 322....

In other words, not every push or shove violates a prisoner's constitutional rights. *See Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir.), *cert. denied sub nom. Employee-Officer John v. Johnson*, 414 U.S. 1033 (1973) (footnote omitted). Whenever prison officials stand accused of using excessive physical force in violation of cruel and unusual punishments clause, the core of judicial inquiry is whether force was applied in good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *See Hudson v. McMillian,* 112 S.Ct. 995, 999 (1992) (stating "we hold that whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley*: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm)(citing *Whitley v. Albers*, 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986)).[6]

5. Inmate Jeffrey Enriquez worked in the Central Maintenance Office at the New Mexico Correctional Facility. Frank Cordova was the supervisor during the period of the alleged incident.[7] According to Plaintiff's inmate grievance form and his civil rights complaint, on September 19, 2000, Frank Cordova kicked the Plaintiff in the back with his leg and foot while he was working

---

[6] The Court in *Hudson* also stated that "[w]hether the prison disturbance is a riot or a lesser disruption, corrections officers must balance the need 'to maintain or restore discipline' through force against the risk of injury to inmates. Both situations may require prison officials to act quickly and decisively. Likewise, both implicate the principle that '[p]rison administrators ... should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'" *See Hudson*, 112 S.Ct at 998-99 (quotations omitted).

[7] Frank Cordova states within his affidavit that he is a Correctional Specialist at the New Mexico Correctional Facility. (Martinez Report Ex. A-8 ¶ 18). Therefore, this Court will assume he was working under the color of state law at the time of the alleged incident.

at his work area. (Martinez Report Ex. A-6). The Plaintiff claims that James Cordova (staff), Thurman Dabbs (inmate), and other maintenance personnel witnessed the incident. *Id*. He alleges that following the incident, Frank Cordova verbally attacked him and once threatened him with a lead pipe. *Id*. Enriquez states that Cordova and James Sandoval were involved in embezzlement schemes in which they used Enriquez to perform illegal acts. Specifically, Enriquez argues that they were misusing funds for the own personal use. Both Sandoval and Cordova deny all allegations regarding the embezzlement claims and after a complete investigation performed by the Federal Bureau of Investigation, the Plaintiff's statements of corruption were considered meritless. (Martinez Report Ex. A-1).

6. The documents presented in the Martinez Report reflect that the alleged September 19, 2000 incident never occurred. First, Frank Cordova states within his affidavit that he "never kicked or pushed Inmate Enriquez." (Martinez Report Ex. A-8 ¶ 18). In addition, Mr. Cordova states that sometime around September 15, 2000, four days before the alleged incident, he asked the correctional officer clerk, James Sandoval to fire Inmate Enriquez and replace him with another inmate because Enriquez created difficulties in the office and frequently became short tempered. (Martinez Report Ex. A-8 ¶¶ 13 and 17). James Sandoval reported that he did not witness Mr. Cordova kick Enriquez in the back and that he did not know anything about the incident. (Martinez Report Ex. A-3 and A-5). Inmate Thurman Hobbs, the other reported witness, states that he also did not witness Cordova kick Enriquez in the back and that Enriquez had been having problems due to his recent divorce. (Martinez Report Ex. A-5). It should also be noted that Enriquez did not report the alleged September 19, 2000 incident until October 13, 2000 and that there are no medical records, either in the Martinez Report or submitted by Plaintiff, regarding injuries sustained from the alleged

attack. (Martinez Report Ex. A-5).

7. Enriquez' second claim asserts that on October 15, 2000, Officer Danny Evans struck him. He states that when he requested his medication, Officer Evans refused, approached him, and struck him on the side of his face. (Martinez Report Ex. B-2). Enriquez claims that Inmates Macy Alderedete, Roberto Cianci, and Arthur Broadnax were witnesses to the incident. (Martinez Report Ex. B-2).

8. The Martinez Report confirms that there was in fact an altercation between Officer Evans and the Plaintiff. The Incident Report filed the day after the alleged attack states that Enriquez was trying to exit his dorm to go to the gym when Officer Evans ordered him to return. (Martinez Report Ex. B-1). Enriquez became "unruly and disruptive and made contact with the Officer. He was pushed away and fell down striking the door and wall as he fell." (Martinez Report Ex. B-1). In his Use of Force Report Form, Officer Evans stated that "Inmate Enriquez repeatedly failed to listen to my direct orders and was also verbally abusive to both myself and CIO Moya. Enriquez twice stepped into my space in a threatening manner and his finger made contact with my face. I then pushed Enriquez away from me." (Martinez Report Ex. B-6). Enriquez claimed in the Medical Incident Report that he was "slammed . . . down." (Martinez Report Ex. B-7). He complained of back pain and exhibited evidence of an abrasion on his right cheek and a red mark on his throat. (Martinez Report Ex. B-7). The Report indicated that Enriquez sustained minimal loss with no more than three to five days of missed working days and that he was treated and returned to security. (Martinez Report Ex. B-7).

9. Inmate Alderete stated that at the time of the incident he saw Enriquez sitting on the floor. (Martinez Report Ex. B-2). Enriquez then got up and leaned on the mail box on the south side

control area. (Martinez Report Ex. B-2). He did not see Officer Evans strike Enriquez. (Martinez Report Ex. B-2). Inmate Cianci stated that he was watching the Yankees and did not see anything but that he was told by Enriquez to say he witnessed Evans strike him. (Martinez Report Ex. B-2).

10. In addition to the Plaintiff's listed witnesses, the Martinez Report includes eye-witness accounts from fellow officers who were on duty at the time of the incident. South Housing Officer, Mark Moya, was on duty with Officer Evans. (Martinez Report Ex. B-3). He states that he and Officer Evans were making sure that none of the inmates went to "chow" or the yard before "chow" was announced. Enriquez was advised that "chow" had not been announced yet and that he would have to put on a t-shirt before he left his dorm. Enriquez responded with an explicative and then walked towards Officer Evans. Evans advised him to go back to his dorm, but Enriquez responded with more explicatives. He stepped towards Officer Evans and pointed his finger in his face. Officer Evans then pushed him away and Officer Moya approached Officer Evans for backup. (Martinez Report Ex. B-3). Officer Huston, who was also on duty passing out tickets for "chow" in the main hallway, states that he heard some yelling coming from the south side. (Martinez Report Ex. B-9). He said that they had not called "chow" for the south side when he saw Officer Evans conversing with Inmate Enriquez. He saw Enriquez step towards Evans and at the same time Evans stepped backwards. When Enriquez lifted his arm to Evans' face, Evans pushed Enriquez to the ground. (Martinez Report Ex. B-9).

11. After a thorough review of the Martinez Report, the complaint, and all of the Plaintiff's supplements, I find Plaintiff's claims are made up of bald unsupported assertions. With respect to the September 19, 2000 incident, it comes down to the Plaintiff's unsupported allegations against multiple statements including officers and inmates. Although the Plaintiff filed a grievance

form, he filed it a month after the alleged incident. (Martinez Report Ex. A-6). In addition, days before the alleged incident, the Plaintiff was notified that he would no longer be working in the maintenance department. All statements concerning the September incident, including inmate statements, allege that Officer Cordova did not strike Enriquez. There are also no medical reports concerning any injuries that the Plaintiff may have incurred.

12. With respect to the October incident, there is a similar evidence. The only evidence presented by the Plaintiff is that Evans hit him causing bodily harm. All statements within the Martinez report state Enriquez was the initiator and that Evans pushed him to the ground in response to Enriquez' physical threat. Even the medical reports indicate minimal physical injury to the Plaintiff. (Martinez Report Ex. A-B-9).

13. Accordingly, the undisputed evidence indicates that the September incident did not occur, that the Plaintiff initiated the October 15, 2000 fight and that Officer Evans used reasonable force in response. Considering the evidence within the Martinez Report which has not been objected to by the Plaintiff, I cannot find that the undisputed material evidence shows the Defendants acted maliciously or sadistically for the very purpose of causing harm to the Plaintiff.

14. In order to prove an Eighth Amendment violation with respect to these two alleged circumstances, the Plaintiff must have at least alleged facts sufficient to support a claim that the officers' force was not applied in a good-faith effort to maintain or restore discipline, but maliciously and sadistically applied in order to cause harm. *See Hudson*, 112 S.Ct. at 999. Because the Plaintiff does not dispute the findings of the Martinez Report with his own responsive pleadings, I conclude that there is no genuine issue of material fact and that Defendants are entitled to judgment as a matter of law concerning Plaintiff's excessive force or cruel and unusual punishment claims.

15. Although a district court may consider the Martinez Report in dismissing a claim, it may not resolve disputed issues of material fact by simply accepting the reports factual findings when they conflict with those in the pleadings. *See Hall*, 935 F.2d at 1109. Therefore, a prisoner need only present sufficient information to contest a fact in the Martinez report in order to prevent dismissal on that ground. However, in this case, Enriquez failed to contest the Martinez Report. I must, therefore, treat the contents of the Martinez Report as true since the Plaintiff has not presented his own counter-affidavits or other material in response to the Martinez Report. *See Barkus v. Kaiser*, 229 F.3d 1162 (10th Cir. Sept. 19, 2000) (unpublished opinion).[8]

16. Even though I would recommend granting summary judgment in the Defendants' favor based on the state of the record before me, I must insure that the *pro se* litigant is provided with proper notice regarding the complex procedural issues involved in summary judgment proceedings. *See Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991)(citing *Jaxon v. Circle K Corp.*, 773 F.2d 1138, 1140 (10th Cir. 1985)(citations omitted)). Because the Plaintiff did not submit a response and/or objections to the Martinez Report which could include any affidavits or sworn statements in support of his claims, I find that fairness is best served if the Plaintiff is allowed thirty days after the entry of these proposed findings and recommended disposition to submit affidavits or other evidence against summary judgment. The Court reminds the Plaintiff that the affidavits or other evidence must not be "'merely colorable'" but must be "'significantly probative.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)).

---

[8] In *Barkus v. Kaiser*, the court relied on the Martinez report in dismissing the complaint because the plaintiff objected to the Martinez Report with conclusory and unsworn allegations in attempt to controvert the report's factual findings. *See Barkus v. Kaiser*, 229 F.3d 1162 (2000) (citing *Vestar v. Hudson*, 216 F.3d 1086, 2000 WL 702872, at *2 (10th Cir. May 26, 2000) (unpublished opinion); *Olson v. Coleman*, 993 F.2d 1551, 1993 WL 141135, at * 1 (10th Cir. April 28, 1993) (unpublished opinion)).

17.     The Plaintiff has also listed as a named Defendant, "Nurse Mark." After several attempts, the Plaintiff has failed to identify and serve the aforementioned Defendant. (*Doc. 31*). Therefore, I recommend dismissing Defendant Nurse Mark without prejudice.

18.     In addition to filing a response to the Court's Order to Cure Defects regarding the service of Defendant Nurse Mark, the Plaintiff added within his response what is reviewed by this Court as a Motion to Amend the Complaint to include Dr. William Shannon. (*Doc. 31*). Because the Plaintiff has failed to allege sufficient facts regarding Dr. Shannon's culpability, I recommend denying the Plaintiff's Motion to Amend filed June 5, 2001 (*Doc. 31*).

19.     Since the Court is able to rule on the merits of the case through an examination of the Plaintiff's complaint, his supplements to the complaint, and the Martinez Report, I find that the Defendant's Motions to Dismiss filed May 25, 2001 (*Doc. 27*) and July 18, 2001 (*Doc. 36*) should be denied as moot.

## **RECOMMENDED DISPOSITION**

I recommend deferring a grant of summary judgment in favor of the Defendants and dismissal of this case with prejudice until thirty days after the entry of these proposed findings and recommended disposition. During this time period, the Plaintiff shall be allowed submit to the Court affidavits or evidence in opposition to summary judgment. I further recommend that the Defendants' Motions to Dismiss filed May 25, 2001 (*Doc. 27*) and July 18, 2001 (*Doc. 36*) be denied as moot. I further recommend that Plaintiff's Motion to Amend filed June 5, 2001 (*Doc. 31*) be denied. In addition, timely objections to the foregoing may be made pursuant to 28 U.S.C. §636(b)(1)(C). Within thirty days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to §636(b)(1)(C), file written objections to such proposed findings and

recommendations with the Clerk of the United States District Court, 333 Lomas Blvd. NW, Albuquerque, NM 87102. A party must file any objections within the thirty day period allowed if that party wants to have appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

_____
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE: THIS IS AN UNPUBLISHED OPINION.

(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA10 Rule 36.3 for rules regarding the citation of unpublished opinions.)

United States Court of Appeals, Tenth Circuit.

Timothy Lynn BARKUS, Plaintiff-Appellant,
v.
Stephen W. KAISER, Warden; Charles Brewer, Unit Manager of Unit A-South D.C.F.;
Taylor Chancellor, Chief of Security; Janet Bryant, Unit Manager of Unit C
North; Sada Jones, Case Manager; King, Officer, Property Officer at Davis
Correctional Facility; Johnson, Chief of Security at Davis Correctional
Facility, Defendants-Appellees.

**No. 00-7044.**

Sept. 19, 2000.

Before BRORBY, KELLY, and MURPHY, Circuit Judges.

ORDER AND JUDGMENT [FN*]

FN* This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir.R. 36.3.

BRORBY.

**\*\*1** After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a)(2); 10th Cir.R. 34.1(G). The case is therefore ordered submitted without oral argument.

Appellant Timothy L. Barkus, an inmate appearing *pro se,* appeals the district court's decision dismissing his civil rights complaint filed under 42 U.S.C. § 1983. We exercise our jurisdiction under 28 U.S.C. § 1291 and affirm.

In his civil rights complaint, Mr. Barkus alleged his thirty-three day placement in a restrictive housing unit, known as a "Phase Program," constituted disciplinary segregation, subjecting him to double jeopardy and denial of due process and equal protection in violation of the United States and Oklahoma Constitutions. Mr. Barkus also alleged his placement in the Phase Program violated Oklahoma Department of Corrections' rules and regulations.

In addressing the allegations in Mr. Barkus' complaint, the district court noted both the State's *Martinez* report and supporting affidavit showed the Phase Program is used as part of a behavior modification program and does not constitute punishment or disciplinary segregation. The *Martinez* report and supporting affidavit further stated the Phase Program "was created for the safety of both the prison officials and the inmates in the general population who do choose to abide by [the] rules." The district court determined Mr. Barkus failed to demonstrate his placement in this program, especially when limited to thirty-three days, was atypical of the ordinary incidents of prison life. Specifically, the district court concluded Mr. Barkus possessed no constitutional right to incarceration in any particular prison or portion of a prison, and that the "vague and conclusory" allegations in his complaint did not establish a protected liberty interest. The district court dismissed Mr. Barkus' complaint as frivolous under 28 U.S.C. § 1915(e), determining it was without merit because it lacked an arguable basis either in law or fact.

On appeal, Mr. Barkus raises the same issues addressed by the district court. In so doing, Mr. Barkus contends the district court erred in: 1) stating his allegations were vague and conclusory; and 2) relying on information in the *Martinez* report, instead of holding an evidentiary hearing. Mr. Barkus also continues to allege his placement in the Phase Program amounted to a form of severe and restrictive discipline or punishment "far from what is considered normal for the rest of the inmate population." Mr. Barkus also asserts for the first time on appeal that officials of the private prison where he is incarcerated violated their contract with the state when they placed him in the Phase Program.

We review the district court's dismissal of Mr. Barkus' complaint as frivolous under § 1915(e)(2)(B)(i) for an abuse of discretion. *See McWilliams v. Colorado,* 121 F.3d 573, 574-75 (10th Cir.1997). While we construe Mr. Barkus' *pro se* pleadings liberally, *see Durre v. Dempsey,* 869 F.2d 543, 545 (10th Cir.1989), we generally will not consider issues raised for the first time on appeal, *In re Walker,* 959 F.2d 894, 896 (10th Cir.1992), or conclusory and unsupported § 1983 allegations. *See Durre,* 869 F.2d at 545.

**\*\*2** Applying this standard, and giving Mr. Barkus' *pro se* allegations a liberal construction, we hold the district court did not abuse its discretion in concluding Mr. Barkus' civil rights complaint is frivolous. Clearly, the allegations in his civil rights complaint are generally vague and conclusory with no arguable basis for relief in either law or fact. *See Abbott v. McCotter,* 13 F.3d 1439, 1440 (10th Cir.1994). The only fact-specific allegations in Mr. Barkus' sworn complaint indicate inmates in Phase I of the Phase program are only allowed to watch television for one hour five nights a week, and are restrained by handcuffs, belly chains and shackles before being taken to watch television and to the shower. We find these allegations insufficient to establish a constitutional violation, especially in light of the fact Mr. Barkus spent only seven or eight days in the most restrictive Phase I of the program, and a total of thirty-three days in the entire Phase Program. *See Sandin v. Conner,* 515 U.S. 472, 486 (1995) (determining thirty days punitive isolation is not an "atypical, significant deprivation."); *see also James v. Wiley,* 125 F.3d 862, 1997 WL 606985, at \*2 (10th Cir. Oct. 2, 1997) (unpublished opinion) (concluding defendant failed to show placement in administrative segregation unit was atypical of ordinary incidents of prison life, particularly when limited to a forty day duration); *Janke v. Price,* 124 F.3d 216, 1997 WL 537962, at \*2 (10th Cir. Sept. 2, 1997) (unpublished opinion) (holding defendant's fourteen day punitive isolation " 'did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest.' ")

Moreover, classification or placement of an inmate into administrative segregation generally does not involve deprivation of a liberty interest. *See Bailey v. Shillinger,* 828 F.2d 651, 652 (10th Cir.1987). As we have previously stated, "[t]he due process rights of prisoners are subject to reasonable limitation or restriction in light of the legitimate security concerns of the institution ..., and 'the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence.' " *Penrod v. Zavaras,* 94 F.3d 1399, 1406 (10th Cir.1996) (quoting *Hewitt v. Helms,* 459 U.S. 460, 468 (1983), and citing *Bell v. Wolfish,* 441 U.S. 520, 546-47 (1979)). In sum, Mr. Barkus fails to show the Phase Program "imposes atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." *See Penrod,* 94 F.3d at 1406 (quoting *Hewitt,* 459 U.S. at 468).

In so holding, we acknowledge a *Martinez* report cannot resolve material disputed factual issues when they are in conflict with the pleadings. *See Hall v. Bellmon,* 935 F.2d 1106, 1111 (10th Cir.1991). However, in this case, the district court could rely on the *Martinez* report in dismissing the complaint

because Mr. Barkus made conclusory and unsworn allegations in his attempt to controvert the report's factual findings. [FN1] *See* Vestar v. Hudson, 216 F.3d 1086, 2000 WL 702872, at *2 (10th Cir. May 26, 2000) (unpublished opinion); Olson v. Coleman, 993 F.2d 1551, 1993 WL 141135, at * 1 (10th Cir. April 28, 1993) (unpublished opinion). In addition to his conclusory objections to the *Martinez* report, we note Mr. Barkus did submit the sworn affidavit of another inmate placed in the restrictive housing unit who asserts he was denied items of personal property such as a radio or television and clothing, required to wear handcuffs, belly chains and leg shackles when taken to the shower, and brought meals on trays which were passed through a slot. For the same reasons we rejected similar allegations raised in Mr. Barkus' sworn complaint, we find this sworn affidavit insufficient to controvert the findings in the *Martinez* report [FN2] or show Mr. Barkus suffered treatment constituting punishment or denial of due process or equal protection in violation of either the United States or Oklahoma Constitutions.

FN1. Mr. Barkus received an opportunity to respond to the *Martinez* Report and his response consisted merely of assertions of perjury and deceit by the state defendants, conclusory allegations he and others were subjected to discipline by placement in the Phase Program, and identification of individuals he believes can controvert the facts set forth in the report. This is insufficient to show any conflict of facts.

FN2. The *Martinez* report and supporting affidavit acknowledge prisoners in Phase I of the Phase Program experience restricted privileges and freedoms for the purpose of inducing behavior modification.

**\*\*3** While Mr. Barkus asserts the district court erred in not holding an evidentiary hearing, we note the district court did not need to resolve any factual dispute through the use of an evidentiary hearing because Mr. Barkus presented conclusory allegations to support his complaint. *See* Robinson v. Gibson, 201 F.3d 448, 1999 WL 1009497, at *2 (10th Cir. Nov. 8, 1999) (unpublished opinion). Finally, because we will not consider issues raised for the first time on appeal, we decline to address Mr. Barkus' contention officials of the private prison where he is incarcerated violated their contract with the state when they placed him in the Phase Program.

Thus, for substantially the same reasons articulated by the district court, we AFFIRM the district court's dismissal of Mr. Barkus' complaint as frivolous under § 1915(e)(2)(B)(i). In so doing, we consider the district court's dismissal of Mr. Barkus' complaint a "strike" under 28 U.S.C. § 1915(g) to be applied toward any of Mr. Barkus' future filings. *See* Jennings v. Natrona County Detention Ctr. Med. Facility, 175 F.3d 775, 780 (10th Cir.1999). Section 1915(g) is the *in forma pauperis* statute which requires a prisoner with three strikes to prepay the entire filing fee before federal courts may consider his or her civil action and appeal. Id. at 778. A copy of this order shall be filed in the records of the United States Court of Appeals for the Tenth Circuit related to repeat frivolous filers. [FN3]

FN3. We remind Mr. Barkus the district court in this case granted his motion to proceed *in forma pauperis* on appeal, payable in partial payments. We remind Mr. Barkus of his obligation to make partial payments until the entire fee is paid.

END OF DOCUMENT